The next case on our call of the docket is agenda number 7, case number 111382, People v. Snyder. Counsel for the appellant. Good morning, your honors. Erica Seaborn from the Illinois Attorney General's office here on behalf of the people. May it please the court. This court should reverse the appellate court's decision vacating the restitution order. The defendant here received the full benefit of her bargain with the state, which included no promise as to what her sentence would be. The appropriate remedy for the Rule 402 violation committed by the trial court in admonishing her is to allow defendant the opportunity to withdraw her plea. However, since in this case defendant has already expressed that she does not want to withdraw her plea regardless of this court's ruling, that's dispositive of the case and the court should deny relief altogether. The appellate court's analysis here would expand this court's jurisprudence in People v. Whitfield to cover pleas where there was no agreement as to sentencing. This would require the state, as in this case, to specifically perform a non-existent term of the contract. This gives defendants an undeserved windfall. The appellate court's analysis would even apply to situations where there was absolutely no contract whatsoever with the state, even to drop charges. The specific performance remedy that was promulgated by this court in Whitfield is only appropriate for benefit of the bargain claim, such as the one in Whitfield where the defendant pleaded guilty in exchange for the promise of a very specific sentence. This is distinct from whether or not a defendant's plea was knowing. If the defendant is not fully informed of the possible penalties before she pleads guilty, then her plea is not knowing and she can have the opportunity to withdraw her plea. This puts the defendant in the same position that she was in before she pleaded guilty, and that's sufficient to protect her due process rights. Unless this court has any questions at this time, I'll address the cross-appeal sentencing issue on rebuttal if raised by the defendant. On the trial judge's admonishment as to the penalty for criminal damage to property, were they accurate or inaccurate? Well, here the trial court didn't admonish her at all as to restitution. I don't recall specifically what he said the possible penalties were for the criminal damage to property. How does the fact that the open plea affect our judgment? Because there was an open plea, there was no agreement as to what the sentence was. The contract terms between the defendant and the State were fully put into the record at pages 2 and 3 of the report of the proceedings. The defendant was originally indicted on six charges, and the deal with the State was she would plead guilty to intimidation and criminal damage, and the State would dismiss the other charges, including the most serious charges, of attempted first-degree murder. That was the full extent of the plea bargain with the State. That was put into the record. That was understood between the parties, and when the trial court was admonishing the defendant, it did emphasize the fact that the defendant understood there was no promise as to sentencing. That's at page 12 of the report of the proceedings. So the fact that it was an open plea as to sentencing means that Whitefield's full analysis as to why specific performance is available as a remedy simply doesn't apply here. The contract between the parties was fully performed. The defendant pleaded guilty to the charges that she had agreed to plead guilty to. The other charges were dropped. That was the full extent of the contract. Adding in a specific performance remedy as to the restitution order is forcing the State  that's distinct from the problem of the trial court giving a faulty admonishment as to restitution. And there's no argument that the trial court's admonishment there was faulty. It should have admonished her that restitution was a possibility. But where the trial court fails to give a full admonishment as to the possible penalties, but there is no agreement with the State as to what the sentence should be, Whitefield's analysis simply doesn't apply, and therefore, defendant shouldn't be entitled to a specific performance remedy as she originally requested. Is Jenkins still good law? I don't know. Well, Jenkins was never adopted by this Court, so it's certainly not good law here. I would argue that Whitefield addressing that situation and not relying on Jenkins' analysis, which is very different from the Whitefield contract analysis, means that Jenkins is certainly not good law in the Supreme Court. Even within the Fourth District, it appears that that Court has backed off from the Jenkins analysis somewhat since Jenkins, I believe, was a case that came out at least 15 years ago, and I don't believe that they have relied on it since. In their improper admonishment, isn't a motion to vacate the plea the only vehicle in which to challenge that? If the admonishment is improper, then generally what the defendant would do is file a motion to withdraw the plea under the Supreme Court rules. That wasn't done here? No. Just so I'm clear, the State is not at this point contesting that there was error in the admonishment? That's correct. We're not contesting that. The trial court should have admonished her that restitution was possible. So the argument the State's making is that in that circumstance, for the remedy and the defendant moves to the defendant's remedy is to withdraw the plea, not just have the term vacated. Is that correct? Correct. And in this case, because the defendant has already said she doesn't want to withdraw the plea, that means that there should not be any remedy available to her. Unless the Court has any other questions. Thank you, Your Honors. Thank you. Counsel for the appellee. May it please the Court, Counsel. I'm Attorney Sam Snyder, representing the appellee in this case and defendant. As stated by counsel, what we're here to do today is to settle a split in the lower courts. And this is a split that doesn't just deal with Whitfield, but deals with another line of cases that one of the justices had referred to, that being the Jenkins case. We're here to decide the proper remedy in a trial court's improper admonishments regarding restitution and a partially negotiated plea. Before entering into that plea, Ms. Snyder faced six charges, as stated by counsel. Four were dismissed. She pled openly to two, the Class III felony intimidation and the Class IV for criminal damage to property, in which she was extendable on both of those. Before accepting the plea to trial, Judge did advise Ms. Snyder of the possible maximum and minimum penalties with regard to the penitentiary sentence, as well as the MSR term, as well as advising her of the possibility of probation on both of those charges. But the Court failed to address any issue regarding any monetary penalty. Not only did it not discuss the possibility of restitution, it didn't even mention the possibility that a fine could be imposed. So any imposition of a financial penalty above $0 would work an injustice and a direct consequence beyond what she was admonished at the plea hearing. Why isn't the State's proposed solution of allowing her to withdraw her plea, why doesn't that adequately protect her rights? Because she relied on this. The State is saying that there is no agreement whatsoever, but that's not exactly true. She didn't go to trial and lose and then face whatever consequence that the Court decided it would impose under the law. If that had happened, then the defendant wouldn't be advised of anything. They go to trial and they lose and they're sentenced. Here, Ms. Snyder was advised of what could happen. Now, counsel is correct in stating that the Court did verify that all sentencing options were on the table. But then it went through and specifically mentioned what those possibilities were, but failed to mention the possibility of restitution or a fine. Counsel, was this presented to the Court as a plea agreement, plea bargain agreement? It was presented as a partial plea, and that is actually set forth in the record and the plea agreement actually states partial plea. So it's partially negotiated, it's not fully negotiated in the sense of the Whitfield case where you know exactly that you're going to face X, Y, and Z, and that's going to be your punishment. Here, you're facing a myriad of possibilities. It's basically a sentencing range, so it's not completely blind. It's okay, well, it could be X, Y, and Z, oh, and by the way, we're going to throw in something else at sentencing, and that's exactly what happened here. And if the Court follows the analysis in the Jenkins case as well as all of the progeny of the Jackson line of cases that originated out of the first district, Jackson being decided in 1973, then the Court would conclude that A, there is a violation of due process, because the state can't argue that no prejudice resulted. For example, there's a case that talks about Jenkins, it's a fourth district case, it's Thompson out of 2007 that distinguishes Jenkins somewhat, but doesn't repeal that case, doesn't say that that case isn't good law, but it basically holds that, well, if the trial judge, for example, on a Class 4 felony says that, okay, you can face up to a fine of $25,000, and the Court imposes restitution saying the amount of $5,000, then no prejudice resulted because you knew you were going to get hit with something, and as long as the restitution doesn't go beyond $25,000, there's no prejudice. And so that's how it distinguished Jenkins, but it didn't say that the implied promise theory that had been adopted or promulgated by Jackson in 1973, that that wasn't good law. It is still good law. And I think it's analogous to Whitefield in the sense that there's an expectation as to what is supposed to happen. In Whitefield, the expectation is exact. In this Jenkins line of cases, in Jackson, in Wills, Wenger, and Culp, all of those being cited in the briefs, those all deal with or primarily deal with partial pleas. A couple of them deal with PTRs, petitions to revoke, where the person was advised of what could happen if their probation is violated. In the Wenger case, a person was advised that he could face one to three years in prison. He received two years probation, and sometime thereafter, the state filed a PTR, and the judge sentenced him to 32 to 96 months. It's well beyond what was stated as a possible sentence that he would face if the PTR were to be filed and proven. Mr. Snyder. I was going to say, Mr. Snyder, in light of Saferlick and the fact that you believe that the sentence imposed was excessive, why didn't you withdraw the guilty plea? Well, there's a reason that the parties entered into this partial plea. And if the court has reviewed the original charges that were set forth in the record, this started out as two counts of attempt, murder, armed violence, possession of a weapon by a felon, as well as the other two charges we already discussed. It's not always in the best interest of the client to try to undo these sorts of deals, but it's not always in the best interest of the state either. There's a reason that these charges were dismissed, and a lot of those things are outside the record. Those are things that we can only speculate as to why. Sometimes it's because witnesses are unavailable. They don't want to testify. Sometimes it's simply because the facts don't really support the seriousness of the charges. In Peoria County, for example, there's a separate charging division, and then the actual trial attorneys who try the case, they didn't file those charges. They're relying on what the charging attorney does. So they receive these cases, and these cases may be supported by the evidence, and sometimes the charges aren't. And that's reflected in a lot of these deals, and it was reflected, I believe, in this case with this partial plea. There was enough evidence to show intimidation with the knife, but not enough to show that my client attempted to murder someone. There's enough evidence to show that she carved up a vehicle and committed criminal damage to property, but perhaps not the armed violence charge. And it's our position that what the state's arguing essentially is to throw the baby out with the bathwater. Whenever a judge makes a mistake, and even the best judges do make mistakes, they go through, sometimes they're filling in for, as in this case, there's two regular felony judges assigned in Peoria. And when there's a conflict, then it's assigned to another judge. And sometimes that judge isn't always up on what the list of items is that he's supposed to admonish a defendant on in sentencing. But there is a remedy, right? I mean, there is a remedy. And the remedy is one that, even if this court rules that it's the proper remedy, that your client doesn't even want to take advantage of, right? Because some pretty serious charges were dropped. Is that a fair statement? So my question is, keeping with cipher lick as well, why isn't that well-reasoned? I mean, they call it a windfall for the defendant. What we have here is not that a judge had restitution as part of the sentence and wasn't able to sentence the defendant to restitution, but rather didn't admonish with respect to restitution, right? So the appellate court in this case employs, okay, you don't admonish on it, we knock it out. Why isn't a better solution to say, well, all right, he didn't admonish, you're going to get another bite at the apple, you can move to withdraw your plea? Well, there's public policy concerns that come into play. So your position is, my specific question is, I know it was pretty long-winded, is why is it not a windfall for a defendant with what the appellate court did in this case? Well, I'm not stating that it's not a windfall, but it can be a detriment too. I think there's two ways to look at it. There's two sides to every coin. It could potentially be a windfall to the defendant. I can concede that. But the consequence of providing only that remedy, see, you're presenting this as door A, and then that's it. But Whitfield gave door A and door B. In that case, the court, this court, stated that, okay, well, you have, Mr. Whitfield, you have the opportunity to A, withdraw your plea, or B, just lower your sentence to bring it in conformity with what was represented to you. But isn't there a significant difference when there's a promise of a specific sentence? Well, as stated before, if you follow the Jenkins line. That was the bargain, right? The bargain is the specific sentence. Right, there was that bargain. Here the bargain is we're dropping some charges and proceeding on a couple other charges, open plea, and a judge that just fails to admonish as to one aspect of that sentence. Right, there is a bargain for exchange, so to speak, in contract law. But here you can kind of draw the analogy to Whitfield in following with the Jenkins line that there's still an implied promise. That person relies to their detriment on what the judge tells him or her at sentencing. And when the sentence isn't what is stated, then there's a violation of that implied promise. The judge is saying this can happen and it doesn't. May I ask, in your analysis here, who's making the promise? The judge? Well, in this instance, yes. So the judge is making the promise to the admonitions? That's correct, Judge. That's correct. Well, what's really happening is if there's an incomplete admonition, right, by the judge, as in this case, and if it happened simultaneously that he gives an incomplete admonition and then looks at his sheet of paper as to a complete list and said, oh, I forgot to tell you that you may be sentenced to restitution as well. If the defendant would say, I'm not going with that deal. I didn't know anything about restitution, right, there would be a vacatur of the plea. There could be, or the defendant could choose door B, which is just to modify the sentence to bring it in conformity with expectations. What I'm urging is that the court provide a defendant with both possibilities, as it did in Whitfield. I think our concern is under what legal framework? I mean, Whitfield has a very developed idea about contract principles between the state and defendant. I ask you, my question is, are you trying to talk about contract ideas with the judge? I'm a little troubled by that. Or are you talking about the framework of a knowing plea? You know, you're saying it would be helpful for a defendant to have a choice of door one or door two. But we're trying to discern what's the appropriate framework to resolve that question. Is it a contract idea? Is it a knowing involuntary relinquishment of an owned right by pleading? What is the theory here? I think it's a contract idea. And I think that's the idea that's been espoused through the Jackson line of cases. It's an implied promise. This is what you're going to get. You didn't get this. So we want, you know, defendant's going to move, appeal the sentence and bring it in conformity with expectations. It's sort of like detrimental reliance on an implied promise. So, yes, that's what. We'd have to rethink our whole ideas about whether or not admonitions by the judge are in fact an offer in a contract sense. Yes. Do any of our cases talk that way about pleas? Besides Whitfield, I'm not aware of any. Possibly Morris. But that was in a different situation. The Whitfield case is about a fully negotiated plea. Not completely analogous, no. Because, like I said, you have fully negotiated terms, and here the terms set forth, as opposed to a range of terms. But I'd submit that the contract principles still apply to both scenarios. The only time it wouldn't apply is if a person goes to trial and loses, and then they get what they're going to get within the boundaries of the contract. That's the bounds of the law, presumably. If we don't agree that there's a contract here, then aren't we left with whether she entered a plea knowingly, intelligently, in light of the failed admonishments by the court? And if that's the situation, the remedy is simply allowance withdrawal? Yes. If this court were to reject the contract principles that I'm urging, then, yes, that would be the logical conclusion. If we were to accept your contract principles, what happens in the case when a judge gives the wrong sentencing range or issues the wrong sentence? I mean, is the same argument made and say, well, the judge told me five years and had to give me ten, so now I only have five years? Essentially, yes. How can that be? Well, it depends on if there's prejudice. Sometimes judges, they'll mess up the minimums. Sometimes they'll mess up the maximums. But if they issue a sentence that is not within the sentencing range, right, I mean, that defendant is not going to get what the judge said. Right? He's not going to get what the judge said. A motion will be brought in this court with respect to a mandamus or what have you to issue the proper sentence because he made a mistake? I mean, are we left with whatever the judge says, even outside of sentencing? I'm just asking that as an example. I'm using that as an example, rather. Where we have defendants that rely to their detriment on statements made by the judge as to what their sentence is going to be, and then that's not what they receive, then yes, that's the proper remedy. In one case, if I can think back. Let me understand this now. So if the judge says, by the way, the range is five to ten and it's ten to 20, and the judge sentences them for five years and it's an improper sentence. There's no prejudice in that instance. There isn't? I don't think so. Is it a contract? Yes, but one that's fulfilled as long as it's within that range. No, I'm saying when he gives the wrong sentencing range. Even issues the wrong sentence. And then later, all of a sudden, the defendant finds out he doesn't have five years, he has ten years. That's exactly what happened in Jackson in 1973. That range was, I believe, one to ten. And it was stated that it was one to five. And there was a PTR filed. And that's the seminal case that established the implied promise theory that's been followed by several cases. And what was the remedy in that case? Did he get the improper sentence? He was sentenced to five years, which was the top end of the range that was stated at sentencing originally. Well, it was within the range. Yes. That's a different scenario than I gave you. Right. I mean, the remedy would be withdrawal of the vacature of the guilty plea. I disagree, Judge. I disrespect plea. Okay. It looks like my time is running low, so I'll move on to my next issue. It's cross-relief petition here. And it relates to the sentence, the sentence on the class three intimidation. Ms. Snyder was sentenced to the maximum extended term on that. Now, the full sentencing hearing was held, and various arguments were made and evidence adduced. And some of the things the court heard was testimony regarding a love triangle between my client, a victim by the name of Jessica King, and a gentleman by the name of Corey Simmons. Testimony adduced was that my client was involved in a relationship and pregnant by Corey Simmons. Jessica King was also involved romantically with this Corey Simmons. And there had been prior incidents of violence between my client and this Jessica King. And on one, actually, adduced at the hearing, there had been a trial where charges were filed against my client previously. She was acquitted. But essentially the facts were that this lady, Jessica King, had, with a small mob of people, attacked my client with a baseball bat. Self-defense was what was asserted at trial, and she was vindicated and exonerated of that charge. With that in mind, my client, in this incident, arrives at Mr. Simmons' house, her lover, and finds this Jessica King, the person who had attacked her with a mob, with baseball bats earlier. And in her pregnant state, knowing that this person had attacked her, and feeling the emotions and probably a sense of betrayal that she did at that time, pulled out of a steak knife and carved up the convertible top of Jessica King. And Jessica, instead of leaving, or excuse me, calling the police and trying to avoid an altercation, went down and confronted her, and that's what led to the intimidation charge where a knife was wield in Jessica's presence. I believe that the trial judge did not properly weigh the factors in mitigation in this case, namely that no physical harm resulted at all. And even though the court did note that there was this love triangle and not everyone... Your time has expired. You may conclude, please. ...that there was some excusable conduct in the sense that she committed a crime with intimidation, but because of these other factors in the background between these two girls and the love triangle, that not all the parties were without fault. And I don't think that the judge properly weighed those factors in mitigation when it gave her the very maximum extended term on this. If it had weighed any mitigation, then it would have given a sentence short of the maximum. It noted the mitigation and then did nothing with it. So I'd ask that the court reduce her sentence from ten years to five years, which is the maximum within the normal range. Thank you. Your Honors, I'd like to begin by briefly addressing the sentencing issue before moving back to Whitfield. All of the arguments that defendant has raised against her supposedly excessive sentence were fully considered and rejected by the trial court. Her criminal history was thoroughly considered, and that criminal history shows that, in addition to the tense relationship between her and Jessica King, when defendant committed this crime, she was on mandatory supervised release and probation from her previous attack on Jessica King, in which she had lit Jessica King's car on fire. The trial court considered that, despite her previous crimes, he had given her a light sentence on the arson conviction, but the fact that she then went on to commit this crime very soon after being released from prison on the arson conviction showed that she had not learned from that opportunity, and that it was necessary to give her an extended term sentence. Under this Court's precedent in People v. Alexander, where the trial court has considered the pre-sentence report, the arguments of counsel, and the defendant's statement in allocation, a sentence is not an abuse of discretion, and it's not appropriate for the appellate court to reweigh the sentencing factors as defendant asked this court to do. I'd like to briefly address the Whitfield issue. Whitfield's holding, the contract analysis, is based on the combination of two factors. First, the fact that Mr. Whitfield had a closed plea for a very specific sentence of 25 years, and the fact that the trial court then gave him a faulty admonishment under Rule 402. It's the combination of those factors that made the Whitfield specific performance remedy available and appropriate for him. This Court acknowledged in People v. Morris that the Whitfield remedy of specific performance was new and novel, and one can see that from looking at this Court's prior precedent. Before Whitfield, this Court had found that plea withdrawal, or the opportunity to withdraw the plea, was sufficient to protect a defendant's rights in situations where there was a faulty admonishment. In the 1989 People v. Kidd case, where the defendant had received a faulty admonishment as to the minimum sentence, and in the 1991 Davis case, where it was also a faulty admonishment as to the minimum sentence. And there are a number of appellate court cases that hold the same, that a plea withdrawal is sufficient to protect a defendant's rights. Here, the defendant didn't rely to her detriment on any promise from the court, because if she had relied to her detriment, she would be seeking to withdraw her plea. She's not doing so. The reason she's not withdrawing her plea is because she thinks, and this is a good decision, she's better off keeping the plea intact than she is withdrawing the plea and potentially having to go to trial. Trial courts don't bargain with defendants when they're giving these admonishments. The parties bargain between the two of them. This is supported by the text of Supreme Court Rule 402, D2, and D3. The parties bargain and then tell the trial court what the terms of the bargain are going to be. The Jenkins line of cases should not be adopted by this court and has not been adopted in the Whitfield case or in any other Supreme Court case, because the court has recognized that it's the state's role to bargain with the defendant and the trial court's role in the admonishments is simply to reduce the plea agreement's oral terms to a written contract. That was done here in this case. The full terms of the plea agreement were on the record at pages 2 and 3. There was no agreement as to sentencing, and therefore a defendant cannot expect that she would receive specific performance of a nonexistent term of that contract. Therefore, this court should reverse the appellate court's decision as to the restitution and affirm the appellate court's decision that the sentence was not excessive. If the court has no further questions, thank you, Your Honors. Thank you. Case number 111382, Agenda Number 7, is taken under advisement in People v. Snyder. Thank you.